[L. A. No. 15036.   In Bank.—April 1, 1935.]

EUGENE DEBS QUIGLEY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Ethel H. Harradine for Petitioner.

Everett A. Corten, Emmet J. Seawell, F. Britton McConnell and Claude F. Weingand for Respondents.

THE COURT.—This is a proceeding to review a decision of respondent Commission denying petitioner's application for compensation for an injury which he claims to have sustained in the scope and course of his employment. We have read the entire record. We are convinced that the case presents no question of law, but is one where the evidence was squarely conflicting as to the cause of injury. Under such circumstances, we cannot interfere with the decision of the Commission. In fairness to petitioner, it should be stated that the evidence produced by him would support an award in his favor, had such an award been made, but, unfortunately for him, the Commission chose to believe the medical testimony produced by the insur-

ance carrier of his employer. We have no power to interfere with an award made under such circumstances.

The facts are not in dispute. Petitioner was employed as a janitor by respondent Ward Chandler Building Company. On the afternoon of July 21, 1933, in the course of his employment, he was engaged in the act of lifting a heavy desk for the purpose of changing the telephone wires. There was only a small space in which to work. While on his knees and while in a "twisted" position, he attempted to lift one end of the desk, so as to put the wires under it, and, as he did so, he experienced a sharp pain on the left side of his chest. As petitioner expressed it, it felt as if something "gave way" in his chest. He immediately told his superior, who was present, what had happened, and she told him not to try to lift the desk, but that she would get one of the other boys to lift it. Apparently no further symptoms occurred for a period of about twenty-four hours. During the afternoon of the next day, July 22d, while stooping over a wash basin, cleaning the same, petitioner experienced a very sharp pain, so acute that he could not straighten up. From then on he experienced considerable pain until July 25th, when he was sent to the Santa Fe Hospital, where he remained nine days, attended by doctors employed by the insurance carrier of the employer. At the end of that period, the insurance company denied liability and petitioner was then removed to the Los Angeles County General Hospital, where he remained for twenty days. Following that, he underwent regular and periodic examinations and treatment as an "out" patient of that hospital, and was still being treated at the time of the various hearings before the Commission.

There is no doubt of the nature of the ailment from which petitioner is suffering. He sustained what is known as a spontaneous haemo-pneumothorax, that is, a complete collapse of the left lung. The only disputed question is whether the collapse resulted from a preexisting pathological condition not connected with the employment, or whether it resulted from the strain of lifting the desk, in which event, of course, it would be compensable. The Commission, on the original hearing, and again on rehearing, decided the injury did not arise out of the employment. On this re-

view, we are limited to determining whether there is any substantial evidence to support this conclusion.

Dr. Richard J. Flamson, who attended petitioner at the Santa Fe Hospital, after testifying in the case, rendered a written report, which was admitted into evidence. In this report, he reviews the history of the case, tells what was done for petitioner at the hospital, and then concludes as follows:

"This patient has a spontaneous haemo-pneumothorax. The inception of this apparently was while he tried to arise from a stooping position while cleaning a washbasin on July 22nd. I do not believe that there was anything unusual about arising from a stooping position . . . This condition, the haemo-pneumothorax, is in the great majority of the cases a complication of old or active tuberculosis. . . . "

Dr. Lawrence Chaffin, who also attended petitioner while he was at the Santa Fe Hospital, in his report, after reviewing substantially the same facts as did the report of Dr. Flamson, concluded, "I find no evidence in this case that patient's left lung collapsed as a result of his employment. I believe this is a classical spontaneous left pneumothorax unassociated with patient's employment."

On the rehearing before the Commission, respondent insurance carrier presented the testimony and the report of Dr. Frank Porter Miller, a specialist in lung diseases and the operator of a sanatorium for tubercular patients. He testified that he made a physical examination of petitioner some months after the occurrence of the injury, had examined the X-rays taken while petitioner was a patient at the Santa Fe Hospital, and had examined the reports of the various doctors. He testified that the X-rays showed a thickened pleura at the left apex, which "indicates that there has been some pathology, not necessarily active at the present time"; that he could not tell definitely whether petitioner had had tuberculosis; that the findings on this point "were not exactly definite, there were marked suspicions that he did"; that if petitioner had come to him for treatment he "would have treated him as potentially tuberculous"; that practically all cases of spontaneous pneumothorax develop from a ruptured tubercle on the outer surface of the lung; that the rupture of a single tubercle will produce a spontaneous pneumothorax without a great

deal of infection of the lung; that it is true that other conditions besides tuberculosis, which conditions he enumerated, can provoke spontaneous pneumothorax, but that none of those other conditions were present here. In response to the question as to whether a person whose lungs are entirely well, healthy and normal could have a spontaneous pneumothorax, he answered, ''There are cases in which it is very difficult and sometimes impossible to demonstrate the pathology. It has been my own experience and observation of probably 225 pneumothoracis that probably always if you are diligent enough you can locate the source or origin; sometimes, it is impossible—but I do not believe it occurs without accompanying pathology''. He further testified that in his opinion there is always a pathological condition preceding a spontaneous pneumothorax, whether it is demonstrable or not; that in analyzing petitioner's case he had considered all possible causes of pneumothorax of which he knew and that he was able to rule out all of them except tuberculosis; that if petitioner's case was caused by tuberculosis of a minimum kind, such as the bursting of a single tubercle, it is possible that with the care petitioner has had the tuberculous condition would be entirely healed and that it would now, some months after the injury, be impossible by physical findings to ascertain the cause; that the fact that petitioner spat up blood while at the Santa Fe Hospital is indicative of some pathology; that it is impossible to say whether the condition occurred when petitioner lifted the desk; that even if it did then occur, he was of the opinion that it was not caused by the strain of lifting the desk; that he was of the opinion that no case of pneumothorax ever occurred from strain; that when the condition gets ripe the lung collapses, whatever the patient is doing; that most cases occur while the patient is asleep or at rest. In his written report, Dr. Miller states:

''Statistics show that 90% of these cases are due to tuberculosis and approximately in 98% there are immediate and acute symptoms . . . I have never known this condition to develop in a patient whose lungs were normal and healthy. We hear of an occasional case where spontaneous pneumothorax develops in a well individual, but it is my opinion that there is always some pre-existing pathology whether demonstrable or not. . . . This man [petitioner] has the

physical attributes of a tuberculous individual. Has a fair skin, red headed (red headed people are notoriously tuberculous). He is underweight, tall and emaciated. . . .

"The information at hand from the physical findings is not sufficient to definitely state that this boy has an active tuberculosis at this time, but we have grave suspicions due to the old healed pleural thickening at the left apex, considerable scarring in the right lung, and the tension in the left shoulder group of girdle muscles which is indicative of activity. This condition . . . commonly comes on suddenly without any apparent cause. As stated above 90% have definite tuberculosis involvements. 98% show immediate and acute symptoms, and it is my opinion that the other 2% have pathology to account for the condition whether demonstrable or not. It is the most probable conclusion that tuberculosis is the underlying cause. . . .

"There must be a lesion before man can have a pneumothorax because as far as is known to medical science, healthy, normal lungs do not develop this condition. It is a fairly safe conclusion that a tubercle near the outer surface of the lung ruptured, causing the pneumothorax and the most probable cause is tuberculosis. . . .

"Long continued effort, such as running or working at high speed over a considerable period, would, of course, increase the circulation of blood through the lung, and increase the respiration rate, as well as the depth of breathing; however, a short sustained effort cannot be shown physiologically to increase the effort. The human lungs are constructed so as to withstand, without damage, far more pressure than it is possible for an individual to build up by physical effort. . . .

"A scientific conclusion cannot be drawn that the effort in moving a desk, which was made by this patient, increased the air pressure to an extent which caused his pneumothorax . . . "

Dr. George W. Jones, assistant medical director of the Commission, rendered a written report in which he states: "I find no explanation for a 24-hour period lapsing before the onset of acute disabling symptoms that characterize such pathology. . . . Spontaneous pneumothorax is not characterized by delayed symptoms. . . . I do not believe that the lifting act of July 21, 1933, was the precipitating cause of

the development of a spontaneous pneumothorax with the acute symptoms not manifesting themselves until 24 hours after this particular physical effort.''

The above evidence amply supports the award of the Commission denying compensation to petitioner. Such evidence refutes petitioner's contention that the lifting act caused or accelerated his injury. It is true that the doctors called by petitioner, all men of unquestioned ability, gave a logical explanation of the cause of the delayed symptoms, and also positively testified that the lifting act of July 21st, with its accompanying strain, caused a tear in the lung tissue, ultimately leading to the collapse of the lung. These doctors could find no evidence of tuberculosis. However, such evidence is directly contrary to the evidence summarized above, particularly that of Dr. Miller. We are not permitted to weigh the evidence. Under the circumstances here disclosed, the award must be affirmed.

It is so ordered.